**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

JAMIE SHAWN MCCALL,                                                                                    PLAINTIFF
ADC #610019

v.                                          4:14CV00238-SWW-JTK

NURSE WINTER, et al.                                                                                   DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The detail of any testimony desired to be introduced at the hearing before the District

1

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.     Introduction

Plaintiff Jamie McCall is a state inmate incarcerated at the Delta Regional Unit of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging failure to protect and inadequate medical care and treatment while incarcerated at the Faulkner County Detention Center from August, 2013, until his transfer to the ADC on November 5, 2013. Plaintiff asks for monetary and injunctive relief from Defendants.[1]

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 54) and Plaintiff's Motion to Deny the Summary Judgment Motion (Doc. No. 59).[2] Plaintiff filed a Response to Defendants' Motion (Doc. Nos. 68-59), Defendants filed a Reply (Doc. No. 71), and Plaintiff filed a Response to the Reply (Doc. No. 75). Pursuant to the Court's April 10, 2015 Order (Doc. No. 81), Defendants submitted additional information in support of their Motion (Doc. No.

---

[1]Defednants Bowser, Brown, Gullet, and Govia were dismissed on June 18, 2014 (Doc. No. 27).

[2]The Court will not address this Motion, other than to note that Plaintiff complains that Defendants' Motion was filed outside the Motions Deadline of January 31, 2015 (Doc. No. 32). However, January 31, 2015 fell on a Saturday, and the Motion, filed on the following Monday, February 2, 2015, was within the time limits set forth in Fed.R.Civ.P. 6.

86). Defendants also responded to Plaintiff's Motion to Deny (Doc. No. 80).

## II. Amended Complaint

Plaintiff was injured on August 9, 2013, and taken to the hospital where he was treated for a fractured skull and eye socket and broken nose. (Doc. No. 5, p. 2) He entered the Jail soon thereafter, and Defendant Winter placed him in a medical POD with eight other inmates, including Stephen Ervin, who was not injured. (Id., p. 1) Ervin attacked Plaintiff inside the POD on August 20, 2013, after the two argued about money which Plaintiff allegedly owed him from before they were incarcerated. (Id., pp. 1-2) The POD was not supervised and no guards came to help Plaintiff for "a long time." (Id., p. 1) Plaintiff was taken to the doctor and treated for a new nasal bone fracture, and received several stitches. (Id., p. 2) He was told to follow-up with a Dr. Fraley, and was given a prescription for Hydrocodone. (Id.) Defendants Shock and Vincent failed to implement policies to protect Plaintiff from harm, and Shock also should not have entrusted Nurse Winter with the authority to house non-injured inmates with injured inmates in the POD. (Id.)

When he first arrived at the Jail, he told several of the Defendants that he was supposed to follow-up with a local doctor concerning the injuries he suffered prior to his incarceration. (Id.) However, he was not taken for this follow-up appointment, and Defendants Winter and Stewart would not allow him to take the Hydrocodone prescribed following the August 20, 2014 incident. (Id.) Plaintiff tried to grieve his medication and follow-up appointment issues, but Defendants Kelley and Teel told him he would need to submit a medical request, thereby making it impossible for him to grieve a medical issue. (Id., p. 3) On August 22, 2013, Defendant Stewart discontinued his Ibuprofen, causing Plaintiff to suffer pain. (Id.) Defendant Winter told him to get medications from the OTC (over the counter) cart, but when he was allowed to take those medications, he was not allowed to take them with food, causing stomach upset. (Id.) He did see Dr. Fraley for a follow-

up appointment on September 10, 2013, and was told he needed nose surgery. (Id.) However, he was not allowed to have the surgery. (Id.)

### III. Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

#### A. Official Capacity Liability

The Court agrees with Defendants that Plaintiff's monetary claims against them in their official capacities should be dismissed. A suit against a county official in his official capacity is the equivalent of a suit against the county itself. Liebe v. Norton, 157 F.3d 574, 578-9 (8th Cir. 1998). In order for a county to be held liable for the unconstitutional acts of its officials, Plaintiff must allege and prove that a written county policy or pattern of widespread unconstitutional conduct was the moving force behind the unconstitutional actions. Jane Doe A v. Special School District of St.

4

Louis County, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff alleges that the Jail lacks a policy which requires that criminal charges be filed against inmates who attack others, and complains that Defendants did not criminally charge Ervin following his attack on Plaintiff. However, he does not allege that this policy, or the lack of some other policy, was the moving force behind the attack on him. Therefore, the Court finds that the monetary claims against Defendants in their official capacities should be dismissed.

### B. Individual Capacity Liability - Qualified Immunity

Defendants ask this Court to grant them qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[3] Defendants are entitled to qualified

---

[3] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S.

immunity only if no reasonable fact finder could answer both questions in the affirmative. <u>Nelson v. Correctional Medical Services</u>, 583 F.3d 522, 528 (8th Cir. 2009).

        1)     **Failure to Protect**

Defendants state this claim fails as a matter of law, because Plaintiff cannot prove that they knew his placement in the medical POD posed a substantial risk of serious harm, and that Defendants disregarded or were deliberately indifferent to that risk. Prior to the date of the attack, neither Plaintiff nor his attacker were listed on each other's enemy alert lists, and Plaintiff did not place anyone on notice that he had a problem with inmate Ervin. Absent such proof, Defendants state they are entitled to qualified immunity.

In response, Plaintiff states that Nurse Winter erred by placing him in the medical pod with Ervin, who was not injured, and that the medical pod is the least controlled and least supervised part of the Jail, because the sleeping areas of the POD are not equipped with a camera. This is where he was beaten, and Defendant Shock was aware of, and intentionally disregarded, the unsafe condition of the cell.

According to the affidavit of Major John Randall, acting administrator for the Jail, the Jail has in place a protective custody policy to protect detainees who fear a risk of harm, and also an enemies list where detainees list persons with whom they should not be incarcerated, or identify inmates causing fear for their safety. (Doc. No. 56-1, p. 2) Prior to the altercation on August 20, 2013, neither Plaintiff nor inmate Ervin indicated that they should not be incarcerated with the other in the same housing unit. (<u>Id</u>.) In a subsequent affidavit, Randall explained that the medical cell at the Jail, Cell 212 (referred to by Plaintiff as the POD), can hold 12-13 inmates, but typically not that many are assigned to the area. (Doc. No. 86-1) The cell has a camera that views the day room

---

at 236).

area of the cell, but not the individual living quarters. (Id.) Five officers are on duty during a shift, one in the tower, one in the control room, and the other three walking the floor and hallways of the Jail. (Id.) The medical unit is visually checked by an officer every 15-30 minutes, and the officers in the tower and control room can view the area via the cameras. (Id., p. 2) On August 8, 2013, Ervin was moved to the medical unit after he was involved in an altercation with another inmate and required medical attention and stitches. (Id.) On August 12, 2013, Plaintiff was moved into the medical unit, based on the injuries he sustained prior to his incarceration. (Id.) The incident occurred on August 20, 2013, and inmate Ervin was removed from the unit the next day, while Plaintiff remained in the unit. (Id.)

Since Plaintiff was a pretrial detainee at the time of his incarceration, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his conditions of confinement. Bell v. Wolfish, 441 U.S. 520, 535 (1979). In the Eighth Circuit, however, the standards applied to such claims are the same as those applied to Eighth Amendment claims. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). Therefore, in order to support an Eighth Amendment claim for relief, Plaintiff must allege and prove that he was incarcerated under conditions posing a substantial risk of serious harm, and that Defendant recklessly disregarded that risk. Jackson v. Everett, 140 F.3d 1149, 1151-1152 (8th Cir. 1998).

In this case, Plaintiff does not deny that he did not notify anyone that he feared being housed with inmate Ervin or that inmate Ervin was considered his enemy. According to Randall's affidavit, Plaintiff was moved into the medical unit with Ervin on August 12, 2013; however, Plaintiff did not complain about Ervin prior to the August 20, 2013 attack. Plaintiff claims that Ervin should never have been housed in the area, because he was not injured, and because Plaintiff's injuries made him more vulnerable to an attack. However, according to records provided to the Court under seal (Doc.

No. 87), Ervin was injured in an attack at the Jail on August 8, 2013, and was moved into the medical pod during his recovery from those injuries. (See also Doc. No. 56-2, p. 4) In addition, Plaintiff's claim that the medical pod was not safe and was not adequately supervised is also rebutted by Randall's affidavit. And, the officers' statements following the August 20, 2013 incident indicate that they immediately responded to the unit after receiving word of a fight in progress, and took Plaintiff for treatment and eventually to the emergency room. (Doc. No. 56-2, p. 4)

Based on this evidence, the Court finds as a matter of law that Defendants were not made aware of a risk of harm to the Plaintiff and did not recklessly disregard any risk. Therefore, no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

### 2)   Deliberate indifference - medical care

Defendants also state Plaintiff cannot provide any proof that they deliberately disregarded his serious medical needs, and provide medical records in support of their Motion (Doc. No. 56-3, pp. 1-13) Defendants state Plaintiff complains about the type of treatment he received, and that he cannot show the detrimental effects of any delay in medical treatment, as set forth in Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995).

Plaintiff's medical records reflect the following treatment:

- Plaintiff was involved in an altercation prior to entering the Jail on August 9, 2013, and was treated at the Conway Regional Medical Center for a broken nose and busted eye. (Doc. No. 56-2, pp. 2-3)

- On August 12, 2013, he requested follow-up medical treatment for his injuries at the Jail, and was seen at sick call on August 15, 2013 (Doc. No. 56-3, p. 1). He was given 800 mg.

Ibuprofen, and scheduled to see the Jail physician on August 22, 2013.  (Id.)

- Following the August 20, 2013 altercation with inmate Ervin, Plaintiff was treated by a Jail nurse and transported to the Conway Regional Medical Center, where he received stitches for a gash to his nose, and was prescribed Hydrocodone. (Id., Doc. No. 56-8, pp. 7-14)  Upon his return to the Jail, he saw Defendant Dr. Stewart on August 22, 2013.  (Doc. No. 56-3, pp. 1, 11) An appointment was made for him to see Dr. Fraley, an ENT, on September 9, 2013.  (Id., p. 1)

- Plaintiff's stitches were removed on August 29, 2013, at which time it was noted that his follow-up appointment was changed to September 10, 2013, because Plaintiff was scheduled for court on September 9, 2013.  (Id.)

- Dr. Fraley saw Plaintiff on September 10, 2013, and prescribed 800 mg Ibuprofen.  (Id., p.2)

- Defendant Stewart reviewed Plaintiff's chart on September 12, 2013, and indicated for Plaintiff to follow-up with Dr. Fraley (as entered by Defendant Winter): "if Dr. Fraley wants to treat for free or @ detainee's expence (sic).  It was a pre-existing problem, came to jail w/it.  Then got into another altercation w/cellmate in med cell & re-injured nose.  Will accomodate transportation ."  (Doc. No. 56-3, pp. 3, 12.)

- Plaintiff returned to the Jail clinic for a follow-up appointment on October 10, 2013. Notation in the record states that Dr. Fraley would get back to the clinic concerning additional ENT treatment.  (Id., pp. 3, 13)

- On October 16, 2013, Defendant Winter spoke to a nurse at the ENT clinic about Plaintiff's forthcoming surgery and questions about payment.  (Id., p. 4)

- On October 18, 2013, the ENT nurse received confirmation of payment and informed Winter to contact the office on October 21, 2013, to schedule surgery.  (Id.)

- On October 22, 2013, Winter spoke with Dr. Fraley's office, and received a scheduled surgery date of November 19, 2013. (Id.) That appointment was cancelled by Dr. Fraley's office, due to his unavailability on that date, and a new surgery date was set for December 11,2 013. (Id., pp. 5-6)

- Plaintiff was transferred to the ADC on November 5, 2013. (Doc. No. 56-2, p. 1) Defendant Winter informed the ADC of Plaintiff's surgery, scheduled for December 11, 2013 (Doc. No. 56-3, pp. 6-7).

In his Response, Plaintiff first complains that upon his arrival at the Jail, he was not given Ibuprofen that he had been taking, and suffered for eight days in pain.[4] He then complains that he was not allowed the Hydrocodone prescribed him on August 20, 2013 at the hospital, and Defendant Stewart changed the prescription to Ibuprofen. He also claims he was denied follow-up visits to outside physicians. He complains about the manner in which Stewart prescribed the Ibuprofen, that he was not allowed to take it with food, and that it caused stomach issues. He claims Winter and Stewart deliberately cancelled his first surgery appointment and somehow arranged for him to be transported to the ADC before other inmates, to avoid paying for his surgery.

To support an Eighth Amendment deliberate indifference claim, Plaintiff must allege and prove that Defendants acted with deliberate indifference to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). An allegation of negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also

---

[4]This allegation, however, was not included in Plaintiff's Amended Complaint.

Smith v. Marcantonio, 910 F.2d at 502 (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds) (quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)). "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

Finally, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). A prison official who is "not involved in treatment decisions made by the medical unit's staff and 'lacked medical expertise,...cannot be liable for the medical staff's diagnostic decision[s].'" Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting Camberos, 73 F.3d at 176). "[I]f any claim of medical indifference ... is to succeed, it must be brought against the individual directly responsible for [plaintiff's] medical care." Kulow v. Nix, 28 F.3d 855, 859 (8th Cir. 1994) (quoting Brown v. Wallace, 957 F.2d 564, 566 (8th Cir. 1992)).

Having reviewed the Plaintiff's medical records, the Court finds Plaintiff provides no evidence \to support his claims of deliberate indifference against Defendants. To the extent that he

alleges such a claim against the Jail officials, this claim should be dismissed because they are not medical professionals and not ultimately responsible for Plaintiff's medical care. See Kulow, 28 F.3d at 859. With respect to Defendants Winter and Stewart, Plaintiff provides no evidence that they deliberately disregarded his serious medical needs. The records show that he received treatment for his injuries both at the Jail and at the local hospital, and was transported to an outside ENT physician for treatment. In addition, he was scheduled for surgery and there is no evidence that Defendants were responsible for the cancellation and rescheduling of his surgery. His claim that they arranged to have him transported to the ADC prior to his surgery to avoid the surgery, is also rebutted by the medical records, which indicate that Nurse Winter contacted the ADC with the doctor contact information, together with a notation that the "Faulkner Co. Sheriff's Dept is responsible for payment to this doctor." (Doc. No. 56-3, p. 7) According to Plaintiff's ADC medical records, x-rays were taken of his nose in January, 2014, which showed a "probable nondisplaced nasal bone fracture. He has visible curvature of the nose. He has air movement through the nares but there is some restriction of air movement. This was preexisting to ADC. There is no deviation of eye movement, move together. He has some inflammation of the nasolabial folds." (Doc. No. 56-9, pp. 3-6) However, there is no indication in the records why ADC chose not to proceed with Plaintiff's scheduled surgery, and no indication of plan of care. (Id.) And, Plaintiff is not suing anyone connected with the ADC with respect to the cancellation of his surgery.

In addition, Plaintiff provides no evidence of a detrimental effect of any delay in his medical treatment, and his claims against Defendants appear to be based on a disagreement over the type of treatment (and medications) they provided. See Beyerbach, 49 F.3d at 1326; Long, 86 F.3d at 765. Finally, allegations relating to denials or delays of the grievance process do not support a constitutional claim for relief. A "[prison] grievance procedure is a procedural right only, it does

not confer any substantive right upon the inmates....it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (quoting Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982)). Therefore, the Court finds as a matter of law that Plaintiff provides no evidence of deliberate indifference, and no reasonable fact finder could find that the facts as alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

**IV.    Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1  Defendants' Motion for Summary Judgment (Doc. No. 54) be GRANTED, and Plaintiff's Complaint against Defendants be DISMISSED with prejudice.

2.  Plaintiff's Motion to Deny Defendants' Summary Judgment Motion (Doc. No. 59) be DENIED.

3.  All other pending Motions be DENIED as moot.

IT IS SO RECOMMENDED this 30th day of April, 2015.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE